BARRY v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    March 24, 1899.)

1. MUNICIPALITIES—STREET GRADING—CONTRACTS.

A contract for filling and grading a street provided that no allowance would be made for any excess above the quantities required by the plan, nor beyond the "present surface of the meadow," for shrinkage or settlement, nor for material sinking or settling. The plan was made a part of the contract, and contained lines to represent the surface of the ground. *Held*, that there could be no recovery for filling that sunk beneath the surface.

2. SAME—EVIDENCE—AMBIGUITY OF CONTRACT.

Parol evidence as to the meaning of the words, "present surface of the meadow," was properly excluded, there being no ambiguity in the contract.

Appeal from special term, New York county.

Action by Thomas Barry against the mayor, aldermen, and commonalty of the city of New York. From a judgment for a less amount than that demanded, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

L. Laflin Kellogg, for appellant.
Theodore Connoly, for respondent.

BARRETT, J. On February 14, 1894, the plaintiff entered into a contract with the defendant "to regulate, grade, set curbstones, and lay cross walks in One Hundred and Sixty-First street, from Gerard avenue to Jerome avenue, and build culvert at Cromwell's creek." The contract provided that the work was to be done "in accordance with the plan and profile of the work approved on the 21st day of September, 1893, on file in the office of the commissioner of street improvements of the Twenty-Third and Twenty-Fourth Wards." It further provided:

"No allowance will be made for any excess above the quantities required by such plans, lines, and specifications on any part of the work. No allowance beyond the present surface of the meadow will be made for any shrinkage or settlement, and the cost of replacing any material sinking or settling will be included in the price paid for filling, measured as above stated."

The plan, as introduced at the trial, contains a series of blue and yellow lines below the grade line of 161st street. They were marked "mud" where they crossed the creek, and were evidently intended to represent the surface of the ground. The engineer for the commissioner of street improvements, under whose direction the plan was made, testified that the two lower lines indicated the levels of the respective sides of the street. This plan bore the inscription, "No allowance will be made for any filling below the surface of the ground;" and also: "The lower line indicates the surface to which the embankment will be allowed. No allowance will be made for any fill below this surface." The sole question is whether the plaintiff is entitled to recover for some 45,000 cubic yards of material used

to fill in beneath the level indicated by blue and yellow lines on the plan.

The contract, specifications, and plan must be read together, and, when so read, are quite unambiguous. The specifications fix the limit to which allowance shall be made for filling as the "present surface of the meadow." These words seem plainly to indicate the surface of the ground at the time of the making of the contract. The argument that they mean a durable or tenable surface, capable of supporting filling, is, at the best, based upon a gratuitous assumption; and it directly conflicts with the conditions under which the language was used, for the "present surface," as the parties well knew, was most of it soft and yielding. And the meaning seems to be made entirely clear by the following provision that there shall be no allowance for "shrinkage or settlement," or for "material sinking or settling." If, however, there is any ambiguity in the contract and specifications, it is resolved by the plan. On this lines are drawn to represent the surface of the ground, and a superscription states distinctly that no allowance will be made for filling below the surface as thus indicated.

None of the exceptions were well taken. Parol evidence as to the meaning of the words, "present surface of the meadow," was properly excluded, for there was no ambiguity in the written agreement. It is also contended that it was error to exclude testimony as to the meaning of the lines shown on the plan. But such testimony was not excluded. Some preliminary questions and some questions calling for conclusions were excluded, but the substantial fact, as to what the lines indicated, was, as we have seen, allowed to be proved by the engineer. None of the other exceptions require mention. We think, therefore, that the judgment rendered at the trial was clearly right.

On the motion for a new trial, it was shown that the words: "The lower line indicated the surface to which the embankment will be measured and allowed. No allowance will be made for any fill below this surface,"—were not upon the plan when it was signed, or on January 3 or 4, 1894, when the plaintiff's agent examined it for the purpose of preparing a bid. This is established by uncontradicted proof. There was a conflict of evidence as to whether the blue and yellow lines were also added subsequent to the examination of the plaintiff's agent or were on the plan throughout. But we cannot say that the weight of evidence on this head supports the plaintiff's claim. On the contrary, the weight of evidence is really with the defendant. That leaves for consideration merely the effect of the uncontradicted evidence as to the absence of the superscription. We think that superscription added nothing to the force and effect of the written agreement. As already stated, the specifications, by themselves, clearly negative the plaintiff's right to recover for material used to fill in below the surface of the meadow, as that surface existed when he undertook the work. The absence of the superscription from the plan in no way affected his rights or influenced his conduct. But there is another conclusive reason why he is not entitled to a new trial. On March 20, 1894, shortly after the com-

mencement of the work, an interview took place between the plaintiff and Commissioner Haffen, Chief Engineer Risse, and Engineer Thompson. This meeting was had for the very purpose of avoiding all misunderstanding as to the work which the plaintiff was to do. Certain questions were put to him, and his answers taken down by a stenographer. He was asked the following questions and gave the following answers:

"Ques. by Chief Risse: One question I would like to ask Mr. Barry, and that is, do you understand perfectly well that no allowances for filling in below the present surface, as indicated on the plan, will be allowed? Ans. by Mr. Barry: You mean no allowance for displacement? Ans. by Chief Engineer Risse: Yes, sir. Ques. by Commissioner Haffen: You signed the specifications, Mr. Barry, did you not? Ans. by Mr. Barry: Yes, sir. Ques. by Commissioner Haffen: You understood what you were bidding on, did you not, Mr. Barry? Ans. by Mr. Barry: Yes, sir. Ques. by Commissioner Haffen: Mr. Thompson, I believe you have a question to ask, and that is that there was no allowance to be made for filling in below the present surface line. You understood that, Mr. Barry, did you not? Ans. by Mr. Barry: Yes, sir; I suppose the specifications stated that."

We thus have the plaintiff's distinct admission that he understood and believed that he was to be paid only for filling above the actual surface of the ground, and was to receive no allowance for what sunk beneath this surface. If there was any ambiguity in the written agreement, this conclusive parol evidence of the understanding of the parties completely negatives the plaintiff's claim.

The judgment and order should each be affirmed, with costs. All concur.